(657 P.2d 1130)

No. 53,551

STATE OF KANSAS, *Appellee*, v. GUY W. PALMER, *Appellant.*

Opinion filed July 15, 1982.

*James W. Wilson*, of Wichita; and *David Michael Rapp*, of Moore, Rapp & Schodorf, of Wichita, for appellant.

*Carl Wagner*, assistant district attorney; *Clark V. Owens*, district attorney; and *Robert T. Stephan*, attorney general, for appellee.

Before MEYER, P.J., ABBOTT and SWINEHART, JJ.

MEYER, J.: Guy W. Palmer (appellant) was convicted of aggravated battery, K.S.A. 21-3414; he was committed to the custody of the secretary of corrections, his sentence being imprisonment for a period of not less than 10 nor more than 20 years.

On December 1, 1980, appellant and three friends, Travis Cain, Robert Miller, and Eric "Tommy" Miller, were in Shar's Dorm, a tavern in Wichita, Kansas. Three fights broke out that night; one or more members of appellant's party were involved in each fight. During the third fight, which involved Tommy Miller, one Robert E. Muzzy, the appellant, and a regular of the tavern, Earl Hart, several knife wounds were inflicted upon Mr. Muzzy's left shoulder and side.

The State offered several witnesses at trial. One witness, whose testimony was most damaging to appellant, was Sharon A. Catlin, owner and manager of the tavern. Ms. Catlin's testimony specifically concerned the events leading up to, and the happenings during, the third and final fight of the evening. She testified that appellant grabbed Earl Hart, spun him around, held a knife to his throat, and said, "Earl, I could slit your throat." At that point, the victim yelled at appellant, commanding him to release Mr. Hart, whereupon a scuffle ensued involving appellant, Tommy Miller,

---

* REPORTER'S NOTE: On October 21, 1982, by order of the Kansas Supreme Court pursuant to Rule 7.04, this case was changed from an unpublished opinion to a published opinion.

and the victim. Ms. Catlin testified that it was appellant who had the knife; she testified she saw appellant "bringing it down around Mr. Muzzy's back back and forth. I could not see the blade come out, but I did see it move up and down behind his back." Ms. Catlin testified that the knife had a curved blade.

Both the victim, Mr. Muzzy, and the bartender, Randy Felkins, testified to the fact the appellant had a knife, and that he was threatening Earl Hart with it. Both these witnesses testified that they saw no one else in the tavern display a knife during the various fights that evening. However, neither of them actually saw the appellant stab the victim. Clearly, these two witnesses corroborated the testimony of Ms. Catlin to a considerable extent.

Appellant's first argument, to the effect that Ms. Catlin's testimony failed to prove the crime because she did not observe the knife penetrate the victim, lacks merit. From the testimony of one who observed an arrow in flight toward a target, on course and within a foot or two of its mark, a jury could logically infer that the arrow struck the target. From the testimony of Ms. Catlin, the jury could properly infer a similar conclusion regarding appellant's knife and Mr. Muzzy's wounds. In this case, it is obvious that the jury felt such an inference was justified.

Second, appellant challenges the trial court's ruling in limine' concerning the testimony of Robert Miller. By this testimony, appellant intended to prove that after he and the two Miller brothers had left the tavern on the night in question, Tommy Miller stated that it was he who had cut Muzzy and that Tommy Miller then displayed a small pocket knife. The judge examined both of the Miller brothers in camera. From this examination, which was made a part of the record, it became apparent that while Robert Miller would testify, Tommy Miller would invoke his Fifth Amendment privilege against self-incrimination. Reasoning that Tommy Miller would not be "available for cross-examination which respect to the statement and its subject matter," the trial court concluded that Robert Miller's testimony would be hearsay not falling within the exception of K.S.A. 60-460(*a*), "Previous statements of persons present," and would therefore be inadmissible. The court thereupon entered its order in limine, forbidding appellant from introducing the third-party testimony of Robert Miller regarding Tommy Miller's statement. Robert Miller, however, was allowed to relate his brother's purely phys-

ical act of displaying a knife. This knife, so claimed to have been exhibited by Tommy Miller, was described by Robert Miller, as being "a little bitty knife," according to the judge. Additionally, the court, while allowing appellant to place Tommy Miller on the stand, further ordered that he not be permitted to exercise his privilege against self-incrimination before the jury.

The issue here is whether the trial court erred in excluding evidence of an extrajudicial statement by Tommy Miller, wherein Tommy Miller allegedly admitted to the criminal act (the stabbing of Mr. Muzzy) of which appellant stood accused and was subsequently convicted.

While the record is fraught with objections and is generally confusing, it appears that Robert Miller was willing to testify that his brother Tommy had, at a point in time after the Miller brothers and appellant left the tavern but before they arrived home, exhibited a knife and stated that he had stabbed the victim with it. Prior to trial, Tommy Miller indicated he would take the Fifth Amendment and would refuse to admit having made such a statement. The State and appellant argued the admissibility of Tommy's statement, but confined their argument relative thereto to K.S.A. 60-460($a$):

"A statement previously made by a person who is present at the hearing and available for cross-examination with respect to the statement and its subject matter, provided the statement would be admissible if made by declarant while testifying as a witness . . . ."

. The State contended that since Tommy Miller testified in the hearing on the motion in limine that he would exercise his Fifth Amendment right, he was "unavailable as a witness." Appellant argued that, because it was Tommy Miller's own brother who would testify as to his incriminating statement, the hearsay had a strong indicia of trustworthiness, and should therefore be admitted under 60-460($a$).

Insofar as K.S.A. 60-460($a$) is concerned, we agree with the State that a witness (in this case Tommy Miller) is in fact not "available for cross-examination" where it has been determined that the witness will exercise his Fifth Amendment right. Such being the case, the evidence as to what Tommy Miller said was not admissible under 60-460($a$), no matter who should attempt to quote him.

In *State v. Oliphant,* 210 Kan. 451, Syl. ¶¶ 2, 3, 502 P.2d 626 (1972), the court held:

"Under the provisions of K.S.A. 60-460(*a*) an extrajudicial statement made by a person who is present at the hearing and available for cross-examination is excepted from operation of the hearsay rule, provided the statement would be admissible if made by the declarant while testifying as a witness."

"Where a declarant has claimed his privilege against self-incrimination he is not available for cross-examination within the meaning of K.S.A. 60-460(*a*)."

See also *State v. Fisher,* 222 Kan. 76, Syl. ¶ 5, 563 P.2d 1012 (1977).

We note that at no time in the court below, nor here on appeal, has appellant argued that the hearsay evidence of Tommy Miller's statement was admissible under K.S.A. 60-460(*a*). That section deals with contemporaneous statements and excited utterances (subsections [1] and [2], the traditional res gestae theory), and statements admissible on the ground of necessity (subsection [3], a recent enlargement of the law of this area). Had the appellant urged 60-460(*d*)(1) or (2), it would have been discretionary with the trial court to determine whether the testimony would be part of the res gestae, based on the specific findings required under each subsection. Res gestae was not argued, nor does anything in the record disclose a ruling by the trial court relative to res gestae. On the other hand, had appellant attempted to argue admissibility under 60-460(*d*)(3), it would have been necessary that the judge find that the statement "was made by the declarant at a time when the matter had been *recently perceived* by the declarant and while *his or her recollection was clear,* and *was made in good faith* prior to the commencement of the action and *with no incentive to falsify or to distort* . . . ." (Emphasis added.) Because (*d*)(3) was not argued to the trial court, no such findings were made.

Since 60-460(*d*) was not presented to the trial court, the appellant should not prevail on such grounds, especially since appellant does not assert 60-460(*d*) on appeal. See *State v. Prince,* 227 Kan. 137, 146, 605 P.2d 563 (1980). Cases other than *Prince* which deal with K.S.A. 60-460(*d*) are *State v. Berry,* 223 Kan. 566, 568-569, 575 P.2d 543 (1978); *State v. Childers,* 222 Kan. 32, 46-47, 563 P.2d 999 (1977); and *Smith v. Estate of Hall,* 215 Kan. 262, 265-268, 524 P.2d 684 (1974).

Neither did appellant present K.S.A. 60-460(*j*) to the trial court, and therefore we could also refuse to consider that matter on

appeal. In *Landrum v. Taylor,* 217 Kan. 113, Syl. ¶ 5, 535 P.2d 406 (1975), the court held:

"Where it does not affirmatively appear that a question raised on appeal was presented for determination by the trial court, this court does not consider it on review."

Considering the fact, however, that appellant strongly urges subsection *(j)* on appeal, we have decided to examine the law relative to that point.

The rule was long held in Kansas that an extrajudicial confession by a stranger was not admissible to exculpate the accused. See *State v. Wilson,* 220 Kan. 341, 346, 552 P.2d 931 (1976); and *State v. Bailey,* 74 Kan. 873, 87 Pac. 189 (1906). The adoption of 60-460(*j*) changed that rule; following the adoption of that statute, court opinions specifically disapproved the older rule stated in the above cases. K.S.A. 60-460(*j*) creates an exception to the hearsay exclusion, allowing admission of:

"a statement which the judge finds was at the time of the assertion so far contrary to the declarant's pecuniary or proprietary interest or so far subjected the declarant to civil or criminal liability or so far rendered invalid a claim by him or her against another or created such risk of making him or her an object of hatred, ridicule or social disapproval in the community that a reasonable man in the declarant's position would not have made the statement unles he or she believed it to be true . . . ."

This subsection broadened the former common-law rule, in that the declarant need no longer be unavailable, and the "penal" and "social" interests are recognized along with the pecuniary and proprietary interests. The courts, however, are not to apply *(j)* mechanically; evidence which contains little indicia of truthfulness may still be excluded, even though it may otherwise qualify for admission hereunder. This was the intent and purpose of the "finding" requirement contained in 60-460(*j*), to allow the judge to make the determination of admissibility in his sound discretion, based on the particular circumstances of each case. The burden of satisfying this foundational requirement is on the party offering the declaration against interest. *Thompson v. Norman,* 198 Kan. 436, Syl. ¶ ¶ 5, 6, 7, 424 P.2d 593 (1967).

The "finding" requirement of 60-460(*j*) was further discussed in *State v. Quick,* 226 Kan. 308, Syl. ¶ ¶ 5, 6, 597 P.2d 1108 (1979). The court had this to say:

"Before a hearsay statement should be admitted as a declaration against penal interest under K.S.A. 60-460(*j*), the statement must in fact have been made against

the declarant's interest so as to have the potential for subjecting the declarant to criminal prosecution at the time of its utterance."

"K.S.A. 60-460(*j*) contemplates that the judge, using judicial discretion, find the statement 'was at the time of the assertion so far contrary' to the declarant's penal interest 'that a reasonable man in the declarant's position would not have made the statement unless he or she believe it to be true.' "

In that same opinion, the high court again recognized the power of the trial court to reject evidence which failed to meet the "finding" test.

"A trial court does have discretion to exclude a declaration against penal interest when the required finding cannot justifiably be made under the circumstances surrounding the making of the declaration." 226 Kan. at 317.

In the case of *State v. Prince,* 227 Kan. 137, Syl. ¶ 8, the court took the opportunity to announce certain factors which should be considered by the judge in applying 60-460(*j*):

"Prior to admitting a declaration against interest, pursuant to K.S.A. 60-460(*j*), a trial judge must make a finding that the character of the declaration was of such nature a reasonable man would not make it unless he believed it to be true. Relevant factors to be considered in making such a determination are the nature and character of the statement, the person to whom it was made, the relationship of the parties, the probable motivation of the declarant in making the statement and the circumstances under which it was made."

Viewing the situation surrounding the making of the instant declaration, and being mindful of the "clear abuse" standard to be applied, we conclude the trial court would have acted reasonably in rejecting third-party testimony of Tommy Miller's alleged statement, had 60-460(*j*) been argued to it below. The statement, if made at all, was made in the presence of only two other persons, appellant and Robert Miller. These persons were, respectively, a friend and a brother. They were quite possibly also partners in crime, depending upon whose version of the incident at the "Shar's Dorm" tavern one believes. The declaration was made soon after the incident, but was not so closely connected with it as to necessarily be a part of the res gestae.

As his next argument, appellant strongly urges this court to conclude the trial court erred in forbidding the invocation of Tommy Miller's Fifth Amendment right against self-incrimination to be presented in the presence of the jury. Both the appellant and the State advised the trial court of their inability to locate a case in point. Furthermore, we have been unable to locate any case directly in point. We conclude the better rule is one which

gives the trial court the discretion to exclude what might otherwise be admissible when its probative value is substantially outweighed by the likelihood that it will confuse or mislead the jury. In *Control Data Corp. v. International Business Mach. Corp.*, 421 F.2d 323, 326 (8th Cir. 1970), the court said:

"It should be remembered that a trial court has a great latitude in ruling on the admissibility of evidence. His determination of legal relevancy is also an act of discretion not to be disturbed absent a clear showing of abuse."

We note the trial court has considerable discretion, under Kansas case law, relative to physical evidence as was said in *State v. Wilson*, 215 Kan. 437, Syl. ¶ 4, 524 P.2d 224 (1974):

"Admissibility of physical evidence is within the sound discretion of the court and is to be determined by the court on the basis of its relevance and connection with the accused and the crime charged."

We see no reason why a similar discretion should not apply to oral statements, particularly where, as here, the only "evidence" that could have been presented to the jury was the disclosure by Tommy Miller that he would invoke his Fifth Amendment right.

We conclude that the slight benefit to the appellant, had Tommy Miller been permitted to invoke his Fifth Amendment right before the jury, was more than outweighed by the prejudicial effect such presentation would have had. Therefore, we do not hesitate to say that where a trial court determines at a hearing in chambers that a witness will invoke his Fifth Amendment right against self-incrimination, it is within the trial court's sound discretion to permit or deny presentation thereof before the jury.

As a final note, appellant, in his brief, cites *Chambers v. Mississippi*, 410 U.S. 284, 35 L.Ed.2d 297, 93 S.Ct. 1038 (1973). This is appellant's principal authority for all his arguments; he also attempts to draw close comparison between *Chambers* and the instant appeal. Upon closer analysis, this analogy does not stand up.

*Chambers* did recognize that in certain instances, it would be a denial of his due process right to a fair trial to deny the accused the right to present witnesses in his own behalf. The Kansas Supreme Court has noted this general holding from *Chambers:*

"The United States Supreme Court has indicated in *Chambers v. Mississippi*, 410 U.S. 284, 298, 35 L.Ed.2d 297, 93 S.Ct. 1038 (1973), that under certain conditions admission of such evidence [hearsay testimony of third-party confes-

sion] on behalf of a criminal defendant may be required by due process." *State v. Quick,* 226 Kan. at 316-17

*Chambers* is, however, distinguishable from the instant case. First, the court in *Chambers* was concerned not only with the admission of hearsay testimony of third-party inculpatory statements, but also with application of Mississippi's common law "voucher" rule. That rule precluded a party from cross-examining his own witness and bound the party to anything his witness might testify to, even when a witness turned hostile after taking the stand. The court, holding that the right to cross-examine witnesses was implicit in the constitutional right of confrontation, ruled that a fair trial had been denied petitioner by application of the "voucher" rule and mandated that said rule not be applied in criminal cases.

Second, the court, in holding that it was error to exclude hearsay testimony of a third-party confession, predicated this holding on the fact that the circumstances surrounding the declarations against interest demonstrated certain indicia of trustworthiness. In particular, the court found that the following facts had some bearing on the admissibility of said declarations. First, the confession was made orally and spontaneously to three separate acquaintances on three separate occasions shortly after the crime; the declarant also signed a sworn, written confession, which he later repudiated. The sheer number of confessions was considered important. Second, the confessions were corroborated by other direct evidence in the case, including eyewitness testimony from the scene of the crime. Finally, the declarant was present at trial, available for and subject to cross-examination concerning his previous statements.

In the instant case, only one inculpatory statement is alleged to have been made, and it was made in the presence of only two persons—two persons who were equally subject to prosecution for the crime to which the declarant allegedly confessed, should the police become involved. Further, there was no other independent evidence against the declarant to corroborate his alleged confession. In fact, the eyewitness testimony strongly supported appellant's guilt, placing the only knife in his hands and placing him in a position requisite for an attack on the victim. Last, Tommy Miller was in court, but was not available for, or subject to, cross-examination by the State or by appellant, due to his exercise of his privilege against self-incrimination.

In the concluding paragraph of its opinion, the U.S. Supreme Court specifically limited the holding in *Chambers* to the particular facts and circumstances there involved.

"We conclude that the exclusion of this critical evidence, coupled with the State's refusal to permit Chambers to cross-examine McDonald, denied him a trial in accord with traditional and fundamental standards of due process. In reaching this judgment, we establish no new principles of constitutional law. Nor does our holding signal any diminution in the respect traditionally accorded to the States in the establishment and implementation of their own criminal trial rules and procedures. Rather, we hold quite simply that under the facts and circumstances of this case the rulings of the trial court deprived Chambers of a fair trial." 410 U.S. at 302-303.

Even the most cursory examination reveals that the circumstances of the instant appeal differ markedly from those in *Chambers.* Thus, while the rationale in *Chambers* is still binding and applicable, the result reached there does not follow in this case.

Affirmed.