(830 P.2d 50)

No. 65,860 ■

STATE OF KANSAS, *Appellee*, v. GRANDLE CHILDERS II, *Appellant.*

Opinion filed September 27, 1991.

*Jack Focht*, of Focht, Hughey, Hund & Calvert, of Wichita, for the appellant.

*Jeffrey E. Goering*, assistant district attorney, *Nola Foulston*, district attorney, and *Robert T. Stephan*, attorney general, for the appellee.

Before REES, P.J., DAVID and LEWIS, JJ.

LEWIS, J.: This appeal is from the defendant's jury convictions of two counts of aggravated robbery. In addition to being convicted of aggravated robbery, the defendant pled nolo contendere to one count of robbery and one count of attempted robbery. As a result of these convictions, the defendant was sentenced to a controlling term of 12 to $42^{1}/_{2}$ years of incarceration.

The defendant raises several issues on appeal. The majority of these issues deal with whether aggravated robbery can be committed with a "toy gun" and with certain evidentiary issues related to that toy gun. The defendant also argues that, based on the recommendation of SRDC, the trial court erred in refusing to modify his sentence. After review, we affirm in part, reverse in part, and remand.

On the evening of October 11 and early morning hours of October 12, 1989, the defendant robbed a Kwik Shop in Wichita on two different occasions. These activities by the defendant are the bases of his convictions of aggravated robbery.

The evening's events began at approximately 11:30 p.m. on October 11, 1989. At that time, the defendant entered a Kwik Shop in Wichita, walked up to the counter, and told a clerk to hand over the money. In the process of committing the robbery, the defendant pulled up his shirt to reveal what appeared to be the butt of a gun in his pants. The defendant asked the two clerks in the shop if they valued their lives and instructed them to give him all of their $20 bills. One of the clerks advised the defendant that he had no $20 bills, whereupon the defendant stated that it did not matter, he would take any bills they had. Accordingly, the clerk put the money in a paper sack, and the defendant took the money and ran.

The defendant was apparently satisfied with the service he received, because he returned to the same Kwik Shop approximately four hours later. On this occasion, one of the clerks from the earlier robbery was on the telephone when the defendant entered, and he immediately recognized the defendant from his earlier visit. The

clerk promptly told his telephone companion to call the police. The defendant walked into the store, picked up a bag of chips and a case of beer, and put the items on the counter. The clerk then told the defendant that it was after hours, and he could not sell him any beer. The defendant, however, was not interested in buying anything. He again pulled up his shirt, revealing the butt of a gun he had placed under the waistband of his pants. While revealing that weapon, he told the clerk, "I don't give a damn about the beer, I want the money that's in the drawer, I'll blow your nuts off." Whereupon, the clerk gave the defendant what money he had left, and the defendant again took the money and left the store.

Within 15 minutes, the defendant was back in the Kwik Shop on a third occasion, although this time he was in the custody of the Wichita Police Department. The clerk promptly identified the defendant as the individual who had robbed him, and the defendant was then arrested and incarcerated.

The "gun" under the defendant's belt was, in fact, only a toy. It was a plastic water pistol that was designed to resemble a "Luger" handgun. We have examined the water pistol in question and find that it does resemble an authentic handgun.

During the course of the two robberies, the defendant did not remove the "gun" from his pants nor wave it around or point it at any occupant of the store. The defendant testified at trial that he did not remove the "gun" from his pants because he wanted his victims to believe that it was a real gun, as he felt such a belief would enhance the chances of a successful robbery.

The two victims testified that they did not know if the "gun" was real or not. One stated that he was "under the impression that [the defendant] had a weapon and he was intending to rob the store." The witness further testified, "I was gonna do as I was told to do." The other victim testified, "I was quite scared. I realized it was a robbery. I was fearful."

During the trial, the State conceded that it could not produce the toy gun in question. It developed that the evidence locker at the police station had had a roof collapse during a storm and the gun could not be found. The defendant moved for a mistrial, which was denied. The State moved to amend the information from using the words "while armed with a dangerous weapon, to wit: a handgun," to read, "while armed with a dangerous weapon, to wit: A toy gun."

A stipulation was then read to the jury that the "gun" used during the robbery was a "black plastic water pistol."

After the defendant was convicted, the toy gun was, in fact, found at the police station among the defendant's personal belongings. Upon finding the gun, the defendant filed a motion for a new trial on the grounds of newly discovered evidence. This motion was denied.

The defendant's convictions of robbery and attempted robbery come from occurrences which took place after he was arrested and released on bond for the aggravated robberies discussed above. This defendant apparently favors Kwik Shops because, while out on bond awaiting trial, he robbed and attempted to rob a different Kwik Shop. On one occasion, he entered a Kwik Shop and demanded that he be given money from the cash register. The clerk obeyed and gave the defendant the money. On the second occasion, he chose a Coastal Mart, which he entered and demanded money. The Coastal Mart clerks, however, only gave him two packs of cigarettes.

We now turn to the issues raised by the defendant on this appeal.

## MAY THE CRIME OF AGGRAVATED ROBBERY BE COMMITTED WITH THE USE OF A TOY GUN?

The defendant raises two issues which will be discussed under this heading. During the trial, the defendant moved for acquittal. After his convictions, he filed a motion for arrest of judgment. He contends, in both instances, that the trial court erred in denying these motions because a toy gun does not meet the definition of a dangerous weapon. The defendant argues that, when the State amended the information to read "while armed with a dangerous weapon, to wit: A toy gun," the information no longer charged a crime since a toy gun is not a dangerous weapon.

The defendant also argues that the trial court erred in instructing the jury on the definition of a dangerous weapon.

Both of these contentions turn on whether a toy water pistol, such as that in the possession of the defendant at the time of the robberies, can be considered a dangerous weapon in the State of Kansas. We have reviewed the law and conclude that the question proposed must be answered in the affirmative.

There have been no cases in Kansas dealing with whether a toy water pistol can be considered a dangerous weapon. However, our

Supreme Court has laid the groundwork for a conclusion that a toy weapon may be determined to be a dangerous weapon under our aggravated robbery statute.

The courts in the United States which have considered this issue have roughly divided themselves into two groups. One set of decisions uses an objective method to answer the question while others use a subjective method.

The objective test depends upon whether the object used in accomplishing the robbery was capable of inflicting serious or deadly harm upon another person. If it cannot do so, it is not considered to be a dangerous or deadly weapon in states utilizing the objective test. An example is *State v. Luckey*, 69 Ohio Op. 2d 111, 322 N.E.2d 354 (Ct. App. 1974), 81 A.L.R.3d 995. In that case, the Ohio court employed an objective test in holding that a .22 caliber blank starter pistol was not a dangerous weapon and would not support the defendant's conviction of a charge of armed robbery.

The subjective test depends on the intent of the robber and the reasonable belief of the victim. If, in fact, the robber intends for the victim to believe the item is a dangerous weapon and the victim does reasonably believe it to be so, then that object is to be considered a dangerous weapon for the purpose of the aggravated robbery statute. This is true even though it may not have been capable of inflicting serious bodily harm. We conclude that the State of Kansas, through a series of decisions, has adopted the subjective test.

An annotation of the various decisions on the issue of whether a toy gun can be considered a dangerous weapon may be found at 81 A.L.R.3d 1006.

In *State v. Mitchell*, 220 Kan. 700, 556 P.2d 874 (1976), the Kansas Supreme Court held that an unloaded gun could be considered a dangerous weapon within the purview of our aggravated robbery statute. In reaching that conclusion, the court stated:

"The appellant last contends the state failed to sustain its burden of proof to show the crime committed was aggravated robbery as opposed to simple robbery. The appellant argues it is not shown he possessed a loaded gun and thus he should not be charged with an aggravated robbery. Of course, with an automatic pistol a witness cannot tell whether a gun is loaded unless a shot is fired. Therefore, many courts have recognized one can be convicted of robbery by means of a dangerous weapon or deadly weapon, notwithstanding the fact that the gun allegedly used was unloaded. (Annot., 79

A.L.R.2d 1412, 1426, § 7 [1961]; and see, *The State v. Archer*, 8 Kan. App. 737, 54 Pac. 927.)" 220 Kan. at 706.

In *State v. Robertson*, 225 Kan. 572, 592 P.2d 460 (1979), the Supreme Court again dealt with this issue. In that case, the defendant was charged with aggravated robbery but was convicted only of simple robbery. The evidence showed that the defendant had his hand in his pocket during the robbery and acted as if he had a gun. The victims thought he had a gun, but the State could not show that, in fact, the defendant did have a gun. The defendant argued on appeal that the trial court should have dismissed the aggravated robbery charge for lack of evidence. Our Supreme Court answered this question in the negative, stating:

"We have concluded that the question of whether the defendant was armed with a dangerous weapon at the time of the robbery was one of fact for the jury to determine. It was not necessary for the State to show that the robber actually exhibited the weapon to the victim in order to raise a jury question. The only requirement was that there be some substantial evidence which raised a reasonable inference that the defendant was armed. As this court pointed out in *State v. Buggs*, 219 Kan. 203, 547 P.2d 720 (1976), the aggravated robbery statute (K.S.A. 21-3427) requires only that the robber be 'armed with' a dangerous weapon, not that the robber openly display the weapon to the victim. Here the victim, Larry Williams, testified that the actions of the defendant in the store led him to believe that the defendant had a pistol or some other type of weapon. The conduct of the defendant, coupled with his statements at the time, constituted circumstantial evidence that the defendant was armed with a firearm." 225 Kan. at 574.

The subjective test was explicitly adopted by the Kansas Supreme Court in *State v. Davis*, 227 Kan. 174, 176-77, 605 P.2d 572 (1980). In that case, the weapon used to accomplish the robbery was a .22 caliber starter pistol, which was incapable of firing a projectile. In holding that the starter pistol could be considered a dangerous weapon to support an aggravated robbery conviction, the Supreme Court, in Syl. ¶ 1, stated:

"In an appeal from a conviction of aggravated robbery (K.S.A. 21-3427) the court holds a starter pistol is a dangerous weapon. Since robbery has always involved intimidation or fear, the circumstances of the robbery, including the weapon, are examined from the victim's point of view. An object can be a dangerous weapon if intended by the user to convince the victim that it is a dangerous weapon and the victim reasonably believes it is a dangerous weapon."

The court goes on to discuss the issue in the body of the opinion as follows:

"There is a split of authority existing among other jurisdictions as to whether a starter pistol is a dangerous weapon. Those decisions are discussed in 67 Am.Jur.2d, Robbery § 6, p. 33, and in Annot: Robbery by Means of Toy or Simulated Gun or Pistol, 81 A.L.R.3d 1006, 1047. Generally, the courts which hold starter pistols are dangerous or deadly weapons rely on a subjective analysis. Since robbery has always involved intimidation or fear, the circumstances of the robbery, including the weapon, are examined from the victim's point of view. An object can be a dangerous weapon if intended by the user to convince the victim that it is a dangerous weapon and the victim reasonably believes it is a dangerous weapon. Our decision in *State v. Robertson*, 225 Kan. at 574, reflects this subjective analysis. See also *State v. Prince*, 227 Kan. 137, 605 P.2d 563 (1980).

"We are satisfied the trial court correctly ruled the appellant's use of a starter pistol elevated the robbery to aggravated robbery. The appellant clearly intended the store attendant to believe the gun was operable and dangerous. The victim could not determine from viewing the gun that it was a starter pistol with a blocked barrel. The cash register was emptied, and the victim was forced to disrobe and submit to rape, because the appellant had the apparent ability to execute the implied threat to use the weapon if resistance was offered. We also note that the starter pistol could easily have been used as a bludgeon. Under these circumstances the starter pistol was a dangerous weapon." 227 Kan. at 176-77.

In *State v. Prince*, 227 Kan. 137, 605 P.2d 563 (1980), the weapon involved was an unloaded BB gun, which was incapable of firing. In holding that this was a dangerous weapon under our statute, the Supreme Court stated:

"May a gun, incapable of firing, be a dangerous weapon under our statute? Authorities are split on the test to determine a dangerous weapon, objective or subjective. We adopted the subjective test in *State v. Robertson*, 225 Kan. 572, 592 P.2d 460 (1979), and reaffirmed it in *State v. Davis*, 227 Kan. 174, 605 P.2d 572 (1980), holding a starter's pistol is a dangerous weapon. See also 81 A.L.R.3d 1006. In the instant case there is no question the BB pistol used was unloaded. We hold this weapon, though unloaded and therefore incapable of firing a projectile, is a dangerous weapon pursuant to K.S.A. 21-3427. The pistol is heavy and could easily have been used as a bludgeon against the victims, rendering serious injury or even death. There is nothing in the record to suggest the robberies were committed in any other fashion than urged by the State." 227 Kan. at 141.

In *State v. Colbert*, 244 Kan. 422, 425-26, 769 P.2d 1168 (1989), the weapon involved was an unloaded, defective gun. The Su-

preme Court, in holding that the weapon in question was a dangerous weapon, stated the law at Syl. ¶ 3 as follows:

"Whether or not a robber is 'armed with a dangerous weapon' for aggravated robbery (K.S.A. 21-3427) purposes is determined from the victim's point of view. An object can be a dangerous weapon if intended by the user to convince the victim that it is a dangerous weapon and the victim reasonably believes it is a dangerous weapon. Hence, an unloaded gun or a gun with a defective firing mechanism may be a dangerous weapon within the purview of the aggravated robbery statute."

The court again referred to the subjective test, which has been adopted in Kansas:

"There was evidence the gun used was defective and inoperable. Additionally, after the robber had taken the victims' money, one victim observed there were no bullets visible in the cylinder. *However, a subjective test is to be used in determining whether a defendant was armed with a dangerous weapon in committing an aggravated robbery. . . .*

"Clearly, the robber herein intended the victims to believe the gun was a dangerous or deadly weapon, and the victims reasonably believed it to be such a weapon. As far as the aggravated robbery charges were concerned, the only real issue for the jury was whether or not the defendant was the perpetrator." (Emphasis added.) 244 Kan. at 425-26.

In *State v. Johnson,* 8 Kan. App. 2d 368, 657 P.2d 1139, *rev. denied* 233 Kan. 1093 (1983), this court held that an air rifle capable of shooting BBs could be a dangerous weapon. We set forth the law in Syl. ¶ 1: "An object can be a dangerous weapon if intended by the user to convince the victim that it is a dangerous weapon and the victim reasonably believes it is a dangerous weapon."

Our review of the Kansas Supreme Court opinions and those of this court clearly indicate that, in this state, the subjective test has been adopted to determine the question at hand. This test is based upon the perception of the victims and the intent of the perpetrator. Thus, even a toy water pistol can be found to be a dangerous weapon if the user intended the victim to believe it was a dangerous weapon and the victim reasonably believed it was a dangerous weapon. The application of this test has no relationship to the question of whether the instrumentality used to accomplish the robbery was actually capable of inflicting deadly harm upon the victim. Indeed, we believe that a careful reading of *State v. Mitchell,* 220 Kan. 700, would lead to the

conclusion that even a finger in one's coat pocket could be considered a dangerous weapon under the subjective test.

The appellant argues that the Kansas cases do not adopt a totally subjective test. He points out that, in *Davis* and in *Prince*, the Supreme Court refers to the fact that the non-functioning guns could have been used as a bludgeon to inflict deadly harm upon the victim. In the case now before this court, he argues that the toy water pistol was totally harmless, being incapable of use either as a gun or as a bludgeon, and he insists this is a distinguishing factor. We disagree with the defendant's reading of the Kansas decisions on this issue. Despite seemingly qualifying language in the body of the opinion, the syllabus in *State v. Davis*, 227 Kan. 174, sets out a purely subjective test. The test set forth in the syllabus of *Davis* does not depend at all on any potential use of the instrumentality as a bludgeon or otherwise. This same purely subjective test is repeated in the syllabi of *State v. Colbert* and *State v. Johnson*. We interpret the law of these cases as adopting a purely subjective test, and we disregard any qualifying language in the opinions as being nothing more than dicta or surplusage.

In the record before this court, the defendant has testified that he intended for his victims to believe that the water pistol was a dangerous weapon because he was convinced that such a belief would enhance his chance for a successful robbery. Both victims testified that they believed the defendant had a real gun, that they were intimidated by that belief, and that they acted accordingly. Under these facts, the toy water pistol in question was a dangerous weapon under our aggravated robbery statute.

The defendant argues that the information did not charge the crime of aggravated robbery. His argument is based on the premise that the information alleged that the item used to commit the aggravated robbery was a toy gun and that a toy gun is not a dangerous weapon. We have held that a toy gun may be a dangerous weapon. We have examined the information as amended and hold that the defendant's argument is without merit. The crime is charged in the words of the statute. The courts of this state have consistently held that, if an information or indictment charges an offense in the language of the statute, it is sufficient. *State v. Bird*, 238 Kan. 160, 166, 708 P.2d 946 (1985); *State v.*

*Garner*, 237 Kan. 227, 237, 699 P.2d 468 (1985). The fact that the information alleged that the dangerous weapon involved was a toy gun does not make the information insufficient. This court has held that a toy gun can meet the definition of a dangerous weapon if the subjective test is met. Whether this test is met is a question of fact for the jury. We hold that the information, as amended, properly charged the defendant with the crime of aggravated robbery.

We next turn to the defendant's contention that the trial court should have granted his motion for acquittal. He argues that the motion for acquittal should have been granted because a toy gun was not a dangerous weapon. This argument is clearly without merit. We hold that, under the subjective test, a toy gun can be a dangerous weapon and that this is a question of fact for the jury.

The defendant next contends that, since the gun was not admitted into evidence at the trial, it was impossible for the jury to determine if the belief of the store clerks that the gun was real was reasonable. He argues that, without presenting evidence to enable the jury to determine reasonableness, the State failed to meet the subjective test and did not prove that the weapon was dangerous. We do not agree.

First of all, the defendant admitted that he intended his victims to believe that he had a real weapon. The victims did, indeed, believe that he had a real weapon. The question of whether the belief of the clerks was reasonable was for the jury. We believe, after reviewing the record, there is ample evidence to support the jury's decision. The jury was advised by stipulation of both parties that the weapon used to accomplish the robberies was a "black plastic water pistol." We have reviewed the testimony of the victims in this case and hold that this testimony, along with the stipulation of the parties, furnished sufficient evidence from which the jury could determine the reasonableness of the victims' belief.

The jury was told that the instrument used to accomplish the robbery was a "black plastic water pistol." We assume this term conveyed some image in the minds of the jurors. This image, along with the testimony of the victims, was sufficient to permit

the jury to determine the issue of reasonableness, along with the other issues submitted.

## JURY INSTRUCTIONS

The defendant contends that the trial court erred in the instruction it gave the jury defining a dangerous weapon.

A trial court is required by K.S.A. 22-3414 to instruct the jury, and "it is the duty of the court to state clearly the principles of law applicable to the issues raised by the evidence in the case." *State v. Perry*, 223 Kan. 230, 236, 573 P.2d 989 (1977). Further, the trial court has discretion in giving its instructions to the jury and, on appeal, the instructions should be approved if, after considering them in their entirety, they properly and fairly state the law as applied to the facts of the case. *State v. Smith*, 232 Kan. 284, 290, 654 P.2d 929 (1982); *State v. Ferguson, Washington & Tucker*, 228 Kan. 522, 526, 618 P.2d 1186 (1980).

On the definition of a "dangerous weapon," the jury was instructed as follows:

"AS USED IN THIS INSTRUCTION A 'DANGEROUS WEAPON' IS:
  A. ANY OBJECT INTENDED BY THE USER TO CONVINCE THE VICTIM THAT IT IS A DANGEROUS WEAPON; AND
  B. WHICH A REASONABLE PERSON UNDER ALL OF THE THEN EXISTING CIRCUMSTANCES WOULD BELIEVE IS A DANGEROUS WEAPON."

We hold that the instruction given was correct. Kansas has adopted a subjective test for determining if a dangerous weapon was used in the commission of a robbery. This subjective test requires that the defendant intend the victim to believe an object is a dangerous weapon and that the victim reasonably perceives the object to be a dangerous weapon. This is the exact standard that the trial court used in instructing the jury. Indeed, the instruction given to the jury in the instant matter is identical to the standards set out in case law. See *State v. Colbert*, 244 Kan. 422; *State v. Davis*, 227 Kan. 174, 605 P.2d 572 (1980); and *State v. Johnson*, 8 Kan. App. 2d 368.

We hold the trial court correctly instructed the jury on the definition of a dangerous weapon.

## NEWLY DISCOVERED EVIDENCE

The defendant argues that the trial court erred in failing to

grant him a new trial based on newly discovered evidence. Shortly after the defendant's conviction, defense counsel found the toy water pistol among the defendant's personal effects. The motion for a new trial contended that the toy gun represented newly discovered evidence.

The rules governing motions for granting a new trial on the grounds of newly discovered evidence are well settled. In *Baker v. State*, 243 Kan. 1, 11, 755 P.2d 493 (1988), the Supreme Court set forth this standard:

" ' "The granting of a new trial for newly discovered evidence is in the trial court's discretion. (*State v. Larkin*, 212 Kan. 158, 510 P.2d 123, *cert. den.* 414 U.S. 848, 38 L. Ed. 2d 95, 94 S. Ct. 134.) A new trial should not be granted on the ground of newly discovered evidence unless the evidence is of such materiality that it would be likely to produce a different result upon re-trial. (*State v. Hale*, 206 Kan. 521, 479 P.2d 902.) The credibility of the evidence offered in support of the motion is for the trial court's consideration. (*State v. Anderson*, 211 Kan. 148, 505 P.2d 691; *State v. Larkin*, [212 Kan. 158].) The burden of proof is on defendant to show the allegedly newly discovered evidence could not with reasonable diligence have been produced at trial. (*State v. Lora*, 213 Kan. 184, 515 P.2d 1086; *State v. Arney*, 218 Kan. 369, 544 P.2d 334.) The appellate review of an order denying a new trial is limited to whether the trial court abused its discretion. (*State v. Campbell*, 207 Kan. 152, 483 P.2d 495; *State v. Anderson*, [211 Kan. 148].)" ' " 243 Kan. at 11.

It appears to us that the question in the instant matter is whether the evidence was material. That is to say, was that evidence of such materiality that it would be likely to produce a different result upon retrial? The trial court held that it was not, and we agree.

We have examined the black plastic water pistol used by the defendant. Our examination of this item, along with our reading of the record, convinces us that had the jury been able to examine this water pistol, it would have been at least as likely if not more likely to convict the defendant at his original trial. In other words, had this evidence been available to the prosecution or the defense, it would not have been probable or even likely to have produced a different result. To the contrary, we believe the defendant's chances of being convicted upon retrial would only be enhanced by the presence of the toy water pistol. As a result, the evidence, while it may be newly discovered, is clearly not

material, and the trial court did not abuse its discretion in denying the defendant's motion for a new trial on the grounds of newly discovered evidence.

## MOTION FOR MISTRIAL

The defendant contends that the trial court erred in not granting his motion for mistrial. The motion for mistrial was premised on the fact that the failure of the State to produce the gun at trial was so prejudicial that it deprived him of a right to a fair trial. According to the defendant, had the jury seen the toy gun, it would not have found him guilty of aggravated robbery. We disagree with the defendant, both in his statement of probable outcome and in his statement of the law.

We have examined the record carefully in this case and conclude that the trial court did not abuse its discretion in denying the defendant's motion for a mistrial. Not having the toy gun introduced into evidence did not so prejudice the defendant as to deny him his right to a fair trial. Indeed, we have concluded that had the jury seen the gun, it would, in all probability, have returned the same verdict. Our examination of the toy gun in question convinces us that there is nothing about this gun that would have changed the result of the trial.

We hold the defendant was not prejudiced by the absence of the toy gun at trial and that the trial court did not abuse its discretion in denying the defendant's motion for mistrial.

## MODIFICATION OF SENTENCE

The final argument presented by the defendant is that the trial court erred in failing to modify his sentence. The defendant argues that, unless the court makes specific findings that he is a danger to the public and to himself, it is required by K.S.A. 1989 Supp. 21-4603(3)(a) that a court must follow the recommendation of SRDC.

K.S.A. 1989 Supp. 21-4603(3)(a) states: "[T]he court . . . shall modify such sentence if recommended by the state reception and diagnostic center unless the court finds that the safety of the public will be jeopardized and that the welfare of the inmate will not be served by such modification." This statute is applicable to the instant matter because it was in effect when the defendant

committed the crimes in October 1989. *State v. Sutherland*, 248 Kan. 96, 804 P.2d 970 (1991).

In the instant matter, the SRDC report recommended, in pertinent part: "Recommendation for this inmate is to continue [to be] incarcerated. A second recommendation is issued in regard to a sentence length modification that would allow the inmate to rejoin society at an earlier date."

We see nothing in the language of this recommendation that is equivocal. The recommendation clearly states that the sentence should be reduced.

In denying the motion of the defendant to modify, the trial court did not make the findings of fact contemplated by 21-4603(3)(a). This is a clear violation of the statute and requires that we remand this matter to the trial court for further consideration of the motion to modify sentence.

The State argues that the trial court made sufficient findings at the sentencing hearing to satisfy the requirements of the statute. We disagree. The sentencing hearing took place prior to the SRDC evaluation and recommendation on behalf of the defendant. After the SRDC report is filed, the trial court must take the report into consideration in determining if sentence modification is appropriate. If the court disagrees with the recommendation, it can defeat that recommendation by making the required findings. If, as the State suggests, the trial court is permitted simply to rely on past findings without taking the SRDC evaluation into consideration, the purpose of the statute is defeated. The statute was created because trial courts were not following the recommendations of the SRDC, and the State was faced with serious prison overcrowding problems. O'Neal, *Criminal Law, Procedures and Sentencing*, 58 J.K.B.A. 27, 27-28 (July/August 1989).

We hold that the trial court abused its discretion by not following the mandates of K.S.A. 1989 Supp. 21-4603(3)(a). As a result, we remand this case to the trial court to determine if the defendant is a danger to the public and if his welfare would not be served by modification. If the trial court makes such findings, the denial of the motion to modify sentence can stand. If the court is unable to make the required findings, the defendant's

sentence must be modified to comply with the SRDC recommendations.

The defendant's convictions and all other actions of the trial court, other than its action on the modification of the sentence, are affirmed.

Affirmed in part, reversed in part, and remanded for further proceedings.