NOT DESIGNATED FOR PUBLICATION

No. 116,152

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

STATE OF KANSAS,
*Appellee*,

v.

STEVEN DALE ANGLE,
*Appellant*.

MEMORANDUM OPINION

Appeal from Ellis District Court; EDWARD E. BOUKER, judge. Opinion filed September 22, 2017.
Affirmed.

*Caroline M. Zuschek*, of Kansas Appellate Defender Office, for appellant.

*Amanda G. Voth*, assistant solicitor general, and *Derek Schmidt*, attorney general, for appellee.

Before MCANANY, P.J., STANDRIDGE, J., and WALKER, S.J.

PER CURIAM: Steven Dale Angle was convicted of aggravated assault of a law enforcement officer in violation of K.S.A. 2016 Supp. 21-5412(d)(1). Angle argues on appeal that there was insufficient evidence to support his conviction.

*Facts*

Angle's conviction arose from an incident which began with a hang-up call to 911 from a landline registered to Angle's residence. The dispatcher who received the call attempted to call the number back. When no one answered, Officers Jason Bonczynski and David Gillan were sent to check out the situation.

1

The officers arrived at Angle's residence at around midnight. As Bonczynski rang the doorbell, Gillan noticed the window blinds move and a man peek through the window. Gillan used his flashlight to illuminate his badge and uniform so that the resident could see that he was a law enforcement officer. Gillan also announced himself as a law enforcement officer.

Angle opened the door, and Bonczynski began speaking with him. After a few moments, Bonczynski realized that Angle was holding a .45-caliber handgun in his left hand, not by the pistol grip but with his hand over the top of the slide and his fingers around the trigger guard. Bonczynski testified that Angle could not have immediately fired the gun with that grip, but within a "brief second" Angle "could have easily adjusted that grip, changed his handling of the weapon, and I would not have been able to react in time."

The officers did not know what had happened at the house to prompt the 911 call. They directed Angle to put down the gun for safety reasons. Gillan testified that he began to fear for his personal safety when Angle refused to do so.

In response to the officers' requests to put the gun down, Angle said something to the effect of "there's no problem," and Angle made a gesture in which both hands came up. At that time, the barrel of the firearm was pointing at Bonczynski's chest. Gillan testified that Angle pointed the gun directly at the two officers. Gillan was scared when this happened so he drew his own gun. So did Bonczynski who also was scared for their safety. Bonczynski testified that when Angle had refused to put the gun down, he was afraid that Angle might adjust his hold on the gun and fire it at him.

After drawing his weapon, Bonczynski repeatedly ordered Angle to drop the gun. Angle raised his hands but refused to drop the gun. After giving Angle five or more orders to drop the gun, Bonczynski grabbed Angle and pulled him to the ground, causing

2

Angle to release his grip on the gun and drop it. Bonczynski placed Angle in handcuffs. Later, Gillan secured Angle's gun, which contained a snap cap and seven live bullets.

Investigator Joshua Burkholder interviewed Angle, who admitted he had been drinking on the night of the incident. Angle said he was watching TV when the doorbell rang. He looked through the curtains and saw "three or four" law enforcement officers standing on the front porch. He answered the door with his handgun because he did not have a place to put the gun down. According to Angle, when he opened the door a flashlight was shown in his face and the officers immediately began yelling and screaming at him to put the gun down. He claimed he "didn't have the time to set the gun down." Angle said that he understood the officers' fear, but that was part of their job.

Angle's son told Burkholder that his father was anti-government and anti-police, though later at trial the son testified he did not remember saying this.

The jury found Angle guilty of aggravated assault of a law enforcement officer. Following the denial of Angle's posttrial motions, the district court granted Angle's motion for a downward durational departure and sentenced him to nine months' imprisonment. This appeal followed.

*Review Standards*

On appeal, Angle argues that the State's evidence was insufficient because the State failed to prove that Angle knowingly placed the officers in reasonable apprehension of immediate bodily harm with a deadly weapon.

In considering this claim, we view the evidence and the reasonable inferences arising from the evidence in the light favoring the State. *State v. Herndon*, 52 Kan. App. 2d 857, 862, 379 P.3d 403 (2016), *petition for rev. filed* August 15, 2016. A verdict may

3

be supported by circumstantial evidence if such evidence provides a basis for a reasonable inference by the fact-finder regarding a fact at issue. Circumstantial evidence, in order to be sufficient, need not exclude every other reasonable conclusion. A conviction of even the gravest offense can be based entirely on circumstantial evidence. *State v. Logsdon*, 304 Kan. 3, 25, 371 P.3d 836 (2016).

While we review the evidence, we do not reweigh the evidence. *State v. Daws*, 303 Kan. 785, 789, 368 P.3d 1074 (2016). It is not our role to supplant the jury's role of weighing the evidence, determining witness credibility, and resolving conflicts in the evidence. *State v. Hawkins*, 40 Kan. App. 2d 10, 12, 188 P.3d 965 (2008).

We will affirm the conviction if we are convinced that a rational fact-finder could have found Angle guilty beyond a reasonable doubt based on the evidence introduced at trial. See *State v. Wilkins*, 305 Kan. 3, 10, 378 P.3d 1082 (2016).

*Analysis*

Under K.S.A. 2016 Supp. 21-5412(d)(1), aggravated assault of a law enforcement officer is knowingly placing a uniformed or properly identified law enforcement officer who is engaged in the performance of his or her duty in reasonable apprehension of immediate bodily harm, committed with a deadly weapon.

Angle concedes that the officers were identified as police officers by their uniforms and they were engaged in their duties as officers. He challenges the sufficiency of the evidence to prove that he knowingly placed the officers in reasonable apprehension of immediate bodily harm by means of a deadly weapon.

4

*Knowingly*

As to whether Angle acted knowingly, the jury was properly instructed: "A defendant acts knowingly when the defendant is aware that his conduct was reasonably certain to cause the result complained about by the State." See K.S.A. 2016 Supp. 21-5202(i); *State v. Kershaw*, 302 Kan. 772, 781, 359 P.3d 52 (2015).

Angle argues that he did not act "knowingly" because the alleged aggravated assault occurred when he moved his hands upwards in a "gesture" while speaking. Gillan testified that in the process of this movement the gun was pointed in the general direction of the officers as Angle brought the weapon up. Angle contends that Gillan's testimony "falls short of suggesting that [Angle] raised his hands knowing it would be perceived as a threat by the officers."

The State presented evidence that Angle chose to answer the door with a handgun in his hand with full knowledge that the individuals at his door were law enforcement officers. After answering the door, Angle ignored the officers' repeated commands to put the gun down. Angle reacted in a confrontational manner, telling the officers "no." In response to Angle's noncompliance, Gillan began to draw his gun because he feared for his safety. Instead of obeying the officers' requests to put the gun down, Angle raised the gun and briefly pointed it directly at the officers. In response, both officers quickly drew their weapons. Angle later told Burkholder that he understood the officers' fear. The evidence supports a finding that Angle was aware that his conduct was reasonably certain "to cause the result complained about by the State." Under these circumstances, we find sufficient evidence to support the jury's conclusion that Angle acted knowingly and with the knowledge that his "gesture" with a handgun during a tense and confrontational situation would cause the officers to be placed in reasonable apprehension of immediate bodily harm.

5

*Reasonable Apprehension of Immediate Bodily Harm*

Next, Angle claims the State failed to prove that he placed the officers in reasonable apprehension of immediate bodily harm because of the manner in which he held the handgun.

Angle concedes that both officers testified that they feared for their safety, but he challenges whether their fear was reasonable. Relying on Merriam-Webster's online dictionary definition of "immediate," he contends that the definition of immediate requires something to occur without an intervening act or without pause. Based on this definition, he argues that his holding the gun in his left hand with the safety engaged precludes a finding that the officers' fear was of immediate harm. He asserts that harm could not have come to the officers without a pause or the intervening act of changing his grip on the gun and releasing the safety.

Angle places importance on the fact that prior to 1992, the assault statute defined assault as an "intentional threat or attempt to do bodily harm to another coupled with apparent ability and resulting in immediate apprehension of bodily harm." K.S.A. 21-3408 (Ensley 1988). He asserts that in this older version of the statute, the victim did not need to fear immediate harm; rather, the victim's apprehension of the harm needed to be immediate. He argues that the change in the placement of the word "immediate" in 1992 signifies the legislative intent to make the crime of assault apply only to situations in which the bodily harm feared is immediate. See K.S.A. 21-3408 (Furse 1995).

For further support, Angle notes the difference between the words imminent and immediate in Kansas caselaw. See *State v. White*, 284 Kan. 333, 351-52, 161 P.3d 208 (2007); *State v. Hundley*, 236 Kan. 461, 464-66, 693 P.2d 475 (1985). The words *imminent* and *immediate* are not interchangeable.

6

Here, the jury was properly instructed that the State needed to prove that the officers were placed in reasonable apprehension of *immediate* bodily harm. In determining whether the record contains sufficient evidence to support this element, it is important to note that the crime of aggravated assault is based on both a subjective apprehension by the victim, i.e., whether the victim had an apprehension of immediate bodily harm, as well as an objective determination that the apprehension was reasonable. See *State v. Bulk*, No. 114,462, 2016 WL 7494359, at *5-6 (Kan. App. 2016) (unpublished opinion); *State v. Hart*, No. 91,545, 2005 WL 81496, at *3 (Kan. App. 2005) (unpublished opinion).

Both officers testified that Angle could have adjusted his grip and disengaged the safety in a very short period of time. Bonczynski testified that Angle could have "easily adjusted that grip, changed his handling on the weapon, and [Bonczynski] would not have been able to react in time." Bonczynski stated that it would not have taken Angle "very long at all" to change his grip into a fire-ready position. Bonczynski described the immediate danger he was facing when Angle pointed the gun at him: "[Angle] had control of my future as far as whether I am shot or not. That was completely up to him, he had control of that situation right then and there." Gillan also testified that regardless "of where that grip is manipulated, [Gillan] knew for a fact that [Angle] would have been able to act faster" than Gillan would have been able to react. Gillan stated that someone who was familiar with his own gun could have made contact with the trigger in a "brief second."

In *State v. Brown*, No. 114,808, 2016 WL 7429424 (Kan. App. 2016) (unpublished opinion), a panel of this court rejected the defendant's claim that a victim was not facing immediate bodily harm when the knife-wielding defendant was four to five feet away from the victim and advancing toward the victim. Under those circumstances, the victim could have been harmed in a matter of seconds. The panel found the evidence sufficient to find that the victim had been placed in reasonable

apprehension of immediate bodily harm. 2016 WL 7429424, at *3.

When interpreting the words in a statute, common words should be given their ordinary meanings. *State v. Barlow*, 303 Kan. 804, 813, 368 P.3d 331 (2016). In this case, Angle's gesture, which caused his handgun to briefly point in the direction of the officers, caused both officers to fear for their lives and draw their own weapons. There was evidence that Angle could have adjusted his grip, released the safety, and fired the handgun in a brief second. Under these circumstances, a reasonable person would likely have felt apprehensive of immediate bodily harm. In addition, the officers expressed their subjective belief that they would not have had time to react if Angle had chosen to take such action. Given this testimony, the State presented sufficient evidence at trial to support a finding that the officers were placed in reasonable apprehension of *immediate* bodily harm.

*Deadly Weapon*

Finally, Angle argues that the State failed to present sufficient evidence that the assault was committed with a deadly weapon. The district court instructed the jury that a deadly weapon

> "is an instrument which, from the manner in which it is used, is calculated or likely to produce death or serious bodily injury. An object can be a deadly weapon if the user intended to convince the person that it is a deadly weapon and that person reasonably believed it to be a deadly weapon."

See PIK Crim. 4th 54.280 (2016 Supp.).

We use a subjective analysis to determine whether an object constitutes a deadly weapon. Thus, an item can be a deadly weapon if the intended victim believed it could cause death or serious bodily harm, and if the user used it in such a way as to

8

communicate to the victim an apparent ability to do bodily harm. *State v. Graham*, 27 Kan. App. 2d 603, 606-07, 6 P.3d 928 (2000).

An inoperable gun can constitute a deadly weapon. *State v. Colbert*, 244 Kan. 422, 425-26, 769 P.2d 1168 (1989). Even a water pistol can be a deadly weapon based on the intent of the user and the reasonable belief of the victim. *State v. Childers*, 16 Kan. App. 2d 605, 613, 830 P.2d 50 (1991)

Angle claims he did not intend to use the gun as a deadly weapon because of the way he held it and because he did not disengage the gun's safety. He relies on the officers' testimony that the gun could not have been fired without Angle changing his grip on the gun and releasing the safety. But merely because it may have taken Angle a "brief second" to make the adjustments necessary to fire the gun does not negate the evidence that the gun was a deadly weapon. Viewing the evidence in the light favoring the State, we find sufficient evidence to support a finding that Angle's gun was a deadly weapon.

Viewed in the entirety, we conclude that a rational fact-finder could find Angle guilty beyond a reasonable doubt of the crime of aggravated assault of a law enforcement officer based on the evidence presented at trial and the reasonable inferences to be derived from that evidence.

Affirmed.