(234 P.3d 860)
No. 102,195

State of Kansas, *Appellee*, v. Wayne Michael Franklin, *Appellant*.

Opinion filed July 2, 2010.

*Christina M. Waugh*, of Kansas Appellate Defender Office, for appellant.

*Natalie Chalmers*, assistant district attorney, *Chadwick J. Taylor*, district attorney, and *Steve Six*, attorney general, for appellee.

Before McANANY, P.J., CAPLINGER and BUSER, JJ.

McANANY, J.: Wayne Michael Franklin robbed Rose Cooney of her purse in a parking lot while holding what Cooney perceived to be a black, possibly semi-automatic, handgun in his right hand and tucked against his body. A few hours later, Franklin attempted a similar robbery of Stephanie Hanna in a different parking lot by pointing a black gun at her and demanding her purse. Hanna refused to submit.

The police arrested Franklin later that day and found a BB pistol in Franklin's pocket along with a debit card issued to Cooney. Franklin admitted using the BB pistol in the commission of these crimes.

The State charged Franklin with aggravated robbery in violation of K.S.A. 21-3427 for the Cooney incident and attempted aggravated robbery in violation of K.S.A. 21-3301 and K.S.A. 21-3427 for the Hanna incident. Both crimes are person felonies. Franklin pled guilty to both.

At sentencing, the State asked the court to find that the BB pistol Franklin used in the commission of these crimes was a deadly weapon for purposes of the Kansas Offender Registration Act (KORA), K.S.A. 22-4901 *et seq*. KORA provides that if the court makes a finding on the record that a deadly weapon was used in the commission of a person felony, the defendant is required to register as a violent offender. K.S.A. 2009 Supp. 22-4902(a)(7).

Franklin objected, arguing that there was no evidence to support a finding that the BB pistol was a deadly weapon. He further argued that an objective test should be applied in determining whether the BB pistol qualified as a deadly weapon for purposes of K.S.A. 2009 Supp. 22-4902(a)(7).

The district court determined that the BB pistol Franklin used was a deadly weapon pursuant to K.S.A. 2009 Supp. 22-4902(a)(7) and ordered Franklin to register as a violent offender. The court then sentenced Franklin to a controlling term of 61 months in prison.

Franklin appeals, claiming that the district court erred (1) in requiring him to register under the KORA and (2) in finding that

the BB pistol was a deadly weapon without the requisite proof mandated by *Apprendi v. New Jersey*, 530 U.S. 466, 147 L. Ed. 2d 435, 120 S. Ct. 2348 (2000).

*K.S.A. 2009 Supp. 22-4902(a)(7)*

The first issue requires us to interpret and apply K.S.A. 2009 Supp. 22-4902(a)(7), which are matters of law subject to de novo review. *State v. Jefferson*, 287 Kan. 28, 33, 194 P.3d 557 (2008). Our task is to determine the legislature's intent through its statutory language, giving ordinary words their ordinary meaning. *State v. Gracey*, 288 Kan. 252, 257, 200 P.3d 1275 (2009). When a statute is plain and unambiguous, an appellate court need not resort to statutory construction. *Double M Constr. v. Kansas Corporation Comm'n*, 288 Kan. 268, 271-72, 202 P.3d 7 (2009). However, when statutory construction is required, the most fundamental rule is that the legislature's intent governs if it is ascertainable. *Hall v. Dillon Companies, Inc.*, 286 Kan. 777, 785, 189 P.3d 508 (2008).

As stated in *State v. Colbert*, 244 Kan. 422, Syl. ¶ 2, 769 P.2d 1168 (1989): "The term 'dangerous weapon' used in the aggravated robbery statute is synonymous with the term 'deadly weapon.' " Accordingly, we will treat these terms as interchangeable throughout this opinion.

The applicable provision of KORA, K.S.A. 2009 Supp. 22-4902(a)(7), defines an offender as "any person who, on or after July 1, 2006, is convicted of any person felony and the court makes a finding on the record that a deadly weapon was used in the commission of such person felony." Our legislature has not defined the term "deadly weapon" as used in K.S.A. 2009 Supp. 22-4902(a)(7). Nor does the legislative history disclose what the legislature meant by the term "deadly weapon."

Franklin argues that we should use the definition of "deadly weapon" applied to the aggravated battery statute; that is, "an instrument which, from the manner in which it is used, is calculated or likely to produce death or serious bodily injury." *State v. Hanks*, 236 Kan. 524, 537, 694 P.2d 407 (1985); see Black's Law Dictionary 1731 (9th ed. 2009). Determining whether an object is a deadly weapon for purposes of the aggravated battery statute requires an

objective test. *State v. Whittington*, 260 Kan. 873, 878, 926 P.2d 237 (1996). Franklin argues that his BB pistol does not satisfy this standard.

On the other hand, the State argues that the subjective standard utilized for defining a "dangerous weapon" under the aggravated robbery statute should be used in this case. See *State v. Childers*, 16 Kan. App. 2d 605, Syl. ¶ 1, 830 P.2d 50 (1991), *rev. denied* 250 Kan. 806 (1992).

"The 'subjective test' to determine a 'dangerous weapon' within the meaning of the aggravated robbery statute depends upon the intent of the robber and the reasonable belief of the victim. If the robber intends for the victim to believe the item used in the robbery is a dangerous weapon and the victim reasonably believes such object to be a dangerous weapon, then the item is considered a dangerous weapon." 16 Kan. App. 2d 605, Syl. ¶ 2.

Franklin pled guilty to aggravated robbery and attempted aggravated robbery. In doing so, he admitted each and every element necessary to convict him of these crimes.

A conviction of aggravated robbery requires proof that the defendant took property from the person or presence of another by force or by threat of bodily harm to a person and that the defendant either was armed with a dangerous weapon at the time or inflicted bodily harm upon a person in the course of the robbery. See K.S.A. 21-3426; K.S.A. 21-3427. A conviction of attempted aggravated robbery requires proof that the defendant committed an overt act toward the perpetration of the crime of aggravated robbery but failed in the perpetration thereof or was prevented or intercepted in executing the aggravated robbery. See K.S.A. 21-3301; K.S.A. 21-3427.

Neither victim sustained bodily harm, which is one of the alternative bases for these crimes. Thus, by pleading guilty Franklin admitted that he used a dangerous weapon in each incident; that is, notwithstanding the fact that he used a BB pistol, he intended that his victims believe that he held a dangerous weapon and they reasonably believed the gun he displayed was a dangerous weapon.

In determining whether Franklin used a deadly weapon in the commission of an aggravated robbery and an attempted aggravated robbery so as to require him to register as a violent offender pur-

suant to K.S.A. 2009 Supp. 22-4902(a)(7), Franklin would have us apply the standard for a weapon used in our aggravated battery statute when Franklin admitted guilt for a completely separate crime, aggravated robbery, which has its own standard for the weapon employed. This seems to us to be a tortured and illogical interpretation of the statutory scheme.

Further, Franklin would have us apply one standard for a deadly or dangerous weapon at the plea hearing and an entirely different standard for a deadly or dangerous weapon at the sentencing hearing. This seems to us to be an equally tortured and illogical protocol.

We construe statutes so as to give them a reasonable construction which avoids unreasonable or absurd results. See *Todd v. Kelly*, 251 Kan. 512, 520, 837 P.2d 381 (1992). We view Franklin's interpretation of these statutes to be unreasonable and inconsistent with the legislature's likely intent. K.S.A. 2009 Supp. 22-4902(a)(7) was enacted in order to protect public safety and provide the public with notice of violent offenders present in the community. House J. 2006, p. 1660; Minutes, House Fed. and State Affairs Comm., February 16, 2006. Allowing a defendant who is convicted of a dangerous person felony involving the use of dangerous weapon to avoid the registration requirements would not fulfill this express statutory purpose. We conclude that the district court did not err in requiring Franklin to register under KORA.

Apprendi

Franklin contends that requiring him to register as a violent offender pursuant to K.S.A. 2009 Supp. 22-4902(a)(7) violates his constitutional rights in the manner prohibited by *Apprendi*. Although Franklin did not object to registration on these grounds at the sentencing hearing, we will consider Franklin's claim on appeal because it presents an issue pertaining to his fundamental rights. See *State v. Conley*, 270 Kan. 18, 30-31, 11 P.3d 1147 (2000), *cert. denied* 532 U.S. 932 (2001).

Again, our review of this issue is de novo. *McComb v. State*, 32 Kan. App. 2d 1037, 1041, 94 P.3d 715, *rev. denied* 278 Kan. 846 (2004).

Franklin concedes this issue was decided against him in *State v. Chambers*, 36 Kan. App. 2d 228, 238-39, 138 P.3d 405, *rev. denied* 282 Kan. 792 (2006). However, Franklin argues that *Chambers* was wrongfully decided.

In *Chambers*, a panel of our court held:

"We conclude that the punitive aspects inherent in the KORA do not implicate *Apprendi*'s essential focus—prohibiting a sentencing judge from imposing 'a more severe sentence than the maximum sentence authorized by the facts found by the jury.' *Gould*, 271 Kan. 394, Syl. ¶ ¶ 2, 4. This determination results because our Supreme Court consistently has applied *Apprendi*'s constitutional guarantees in cases involving increased sentences (*Gould* and *Anthony*[, 273 Kan. at 729]), while declining to apply those same guarantees where the court found that the subject matter did not relate to a sentencing judge's imposition of a more severe sentence than the maximum sentence entitled by the jury's verdict (*Carr*[, 274 Kan. at 452], *Garcia*[, 274 Kan. at 711-12], and *Beasley*[, 274 Kan. at 722-23]).

"We uphold the constitutionality of the KORA. *Apprendi* does not apply to a sentencing judge's finding beyond a reasonable doubt that an offense was sexually motivated which results in imposition of the provisions of the KORA, K.S.A. 2005 Supp. 22-4901 *et seq*.

"We hold the sentencing judge's finding of sexual motivation in the present case did not increase the terms of Chambers' underlying prison sentences beyond the maximum sentence provided for burglary. The sentencing judge's determination of sexual motivation did not, therefore, implicate *Apprendi*'s guarantee of rights under the Sixth and Fourteenth Amendments to the Constitution of the United States." *Chambers*, 36 Kan. App. 2d at 239.

The facts now before us are more compelling than those in *Chambers*. In *Chambers*, the district court found that the defendant's crimes were sexually motivated after the defendant pled guilty to multiple burglaries. The factual basis for the defendant's plea was that he broke into houses and took ladies' undergarments. The court found the crimes to have been sexually motivated based, in part, upon the nature of the items stolen.

Being sexually motivated to steal women's undergarments is not a statutory element of the crime of burglary. However, the use of a dangerous weapon *is* a statutory element of the crimes to which Franklin pled guilty. In entering his guilty plea, Franklin admitted using a dangerous weapon in these aggravated robbery incidents.

At Franklin's plea hearing the court made it abundantly clear to Franklin that by entering his guilty plea he was giving up his right

to a trial in which the State would be obligated to prove his guilt beyond a reasonable doubt. In entering his guilty plea Franklin voluntarily abandoned the very right he now claims: the right to have the State prove beyond a reasonable doubt that he used a dangerous weapon to commit these crimes.

We conclude that requiring Franklin to register under KORA did not violate his constitutional rights in a manner prohibited by *Apprendi.*

Affirmed.