NOT DESIGNATED FOR PUBLICATION

No. 121,872

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

STATE OF KANSAS,
*Appellee*,

v.

BRIAN L. EPP,
*Appellant*.


MEMORANDUM OPINION

Appeal from Reno District Court; TRISH ROSE, judge. Opinion filed November 25, 2020. Affirmed.

*Patrick H. Dunn*, of Kansas Appellate Defender Office, for appellant.

*Andrew R. Davidson*, assistant district attorney, *Keith Schroeder*, district attorney, and *Derek Schmidt*, attorney general, for appellee.


Before POWELL, P.J., GREEN and STANDRIDGE, JJ.


PER CURIAM: Following his convictions for criminal threat and defacing identification marks on a firearm, Brian L. Epp appeals from the district court's order requiring that he register as a violent offender under the Kansas Offender Registration Act (KORA), K.S.A. 2019 Supp. 22-4901 et seq. Epp raises two constitutional arguments for the first time on appeal. First, Epp contends that KORA violates offenders' constitutional right to due process by failing to provide a process to contest the district court's factual findings. Second, Epp alleges the district court erred by increasing his punishment based on improper judicial fact-finding in violation of his constitutional

1

rights as recognized in *Apprendi v. New Jersey*, 530 U.S. 466, 120 S. Ct. 2348, 147 L. Ed. 2d 435 (2000). For the reasons stated below, we affirm the district court's order requiring Epp to register as a violent offender under KORA.

FACTUAL AND PROCEDURAL BACKGROUND

In October 2018, Epp was involved in a confrontation with a neighbor after his dog ran onto the neighbor's property. During the confrontation, Epp pointed a gun at the neighbor and shot in her direction.

The State charged Epp with aggravated assault, criminal threat, criminal carrying of a weapon, defacing identification marks on a firearm, criminal use of a weapon, and possession of drug paraphernalia. Pursuant to a plea agreement, Epp pled guilty to criminal threat and defacing identification marks on a firearm. In exchange, the State dismissed the remaining charges. When giving a factual basis for the pleas, the State explained that Epp had pointed a handgun in his neighbor's direction, shot one round, and told her that he had "more rounds than her, so let's go." The State also noted that law enforcement had discovered a single shotgun with all identifying marks removed inside Epp's garage.

Before sentencing, a presentence investigation (PSI) report indicated that a special sentencing rule applied because Epp's criminal threat conviction was a "[p]erson felony committed with a firearm." When a firearm is used to commit a person felony, the sentence is presumptive imprisonment. K.S.A. 2019 Supp. 21-6804(h). The PSI report also reflected that Epp's criminal threat conviction required offender registration with a court finding on the record that a deadly weapon was used in the commission of his crime. See K.S.A. 2019 Supp. 22-4902(e)(2).

Epp filed a motion for departure from his presumed sentence. The parties appeared at a sentencing hearing where the district court found on the record, over defense counsel's objection, that Epp had committed the crime of criminal threat while using a firearm. As a result, the court ordered Epp to register as a violent offender. The court later denied Epp's motion for departure and imposed a controlling 12-month prison sentence with a postrelease supervision term of 12 months. The journal entry required Epp to register as a violent offender for 15 years after his release from prison given the court's finding that he committed a person felony with a deadly weapon.

LEGAL ANALYSIS

KORA requires violent offenders to register for 15 years following their discharge or release from custody. See K.S.A. 2019 Supp. 22-4906(a)(1)(N). K.S.A. 2019 Supp. 22-4902(e)(2) defines "violent offenders" as any person who "is convicted of any person felony and the court makes a finding on the record that a deadly weapon was used in the commission of such person felony."

Epp challenges his requirement to register as a violent offender, arguing first that KORA violates offenders' constitutional right to due process by failing to provide a process by which to contest the district court's factual findings creating a duty to register and failing to establish the State's burden of proof. Epp also contends that by ordering him to register as a violent offender, the district court erroneously increased his punishment based on improper judicial fact-finding in violation of his constitutional rights as recognized in *Apprendi*. We address each argument in turn.

*Due process under KORA*

Epp argues that KORA is unconstitutional because it violates offenders' due process rights. Epp concedes he did not challenge the constitutionality of KORA before

3

the district court. Generally, constitutional grounds for reversal asserted for the first time on appeal are not properly before the appellate court for review. *State v. Daniel*, 307 Kan. 428, 430, 410 P.3d 877 (2018). But Epp correctly argues that we may address the issue for the first time on appeal because such consideration is necessary to serve the ends of justice and prevent the denial of fundamental rights. See *State v. Phillips*, 299 Kan. 479, 493, 325 P.3d 1095 (2014) (setting forth exceptions to general rule that new legal theory may not be asserted for first time on appeal).

Determining a statute's constitutionality is a question of law subject to unlimited review. Appellate courts presume statutes are constitutional and must resolve all doubts in favor of a statute's validity. We are bound to interpret a statute in a way that makes it constitutional if there is any reasonable construction that would maintain the Legislature's apparent intent. *State v. Gonzalez*, 307 Kan. 575, 579, 412 P.3d 968 (2018).

Under the Fourteenth Amendment to the United States Constitution, no State may "deprive any person of life, liberty, or property without due process of law." Registration requirements affect an offender's liberty as well as his or her finances. See, e.g., K.S.A. 2019 Supp. 22-4905 (listing ongoing fees and duties required of registered offenders). The basic elements of procedural due process are notice and "the opportunity to be heard at a meaningful time and in a meaningful manner." *In re Care & Treatment of Ellison*, 305 Kan. 519, 526, 385 P.3d 15 (2016).

Epp argues that KORA violates offenders' due process rights in two ways. First, he contends that the Act does not give offenders an opportunity to contest the district court's exercise of a discretionary deadly weapon finding. Second, Epp alleges that the Act fails to specify the burden of proof required to find that an offender used a deadly weapon when committing a person felony.

*Opportunity to contest discretionary finding*

Epp asserts that KORA violates his right to due process by providing no opportunity to contest the district court's exercise of its discretion to find that he used a deadly weapon in committing the crime of criminal threat, a person felony. "Procedural due process imposes constraints on governmental decisions which deprive individuals of 'liberty' or 'property' interests within the meaning of the Due Process Clause of the Fifth or Fourteenth Amendment." *Mathews v. Eldridge*, 424 U.S. 319, 332, 96 S. Ct. 893, 47 L. Ed. 2d 18 (1976). "The fundamental requirement of due process is the opportunity to be heard 'at a meaningful time and in a meaningful manner.'" 424 U.S. at 333 (quoting *Armstrong v. Manzo*, 380 U.S. 545, 552, 85 S. Ct. 1187, 14 L. Ed. 2d 62 [1965]).

Violent offenders are required to register under K.S.A. 2019 Supp. 22-4902(a). A violent offender is statutorily defined as any person "convicted of any person felony and the court makes a finding on the record that a deadly weapon was used in the commission of such person felony." K.S.A. 2019 Supp. 22-4902(e)(2). Here, Epp was convicted of criminal threat, a person felony. So Epp's crime of conviction did not automatically qualify him as a violent offender. But in order to be deemed a violent offender under the facts here, KORA required the court to make a finding on the record that a deadly weapon was used when Epp committed the crime of criminal threat. So KORA provided notice to Epp that the district court might exercise its discretion to make the requisite fact-finding and require registration. And Epp does not dispute that he was provided adequate notice. Instead, he alleges that he was denied a meaningful opportunity to be heard before the sentencing court exercised its discretion to consider and then find that he used a deadly weapon in committing the crime of criminal threat. For the reasons stated below, we are not persuaded by Epp's argument.

We begin with the plea hearing. After Epp pled guilty to the crime of criminal threat, the district court asked the State to provide a factual basis. The State then provided the following facts:

> "[The victim Vanessa Wenzel] stated her neighbor, Brian Epp, who lived at [address omitted] had pointed a handgun in her direction and shot one round. [Wenzel] said the defendant, Mr. Epp, also told her he had more rounds than her, so let's go. Wenzel said when Epp said this, she was afraid that he would hurt her since he already shot at her once and she was scared."

So as early as the plea hearing, Epp had notice and an opportunity to be heard on whether a gun was used in the commission of the crime to which he was pleading guilty. Although he had an opportunity to do so, Epp did not object to the State's factual basis. In the absence of any objection, the district court found a factual basis for the charges based on the State's undisputed proffer and found the Epp guilty.

We now move to the PSI report, which indicated that a special sentencing rule requiring presumptive prison in what would otherwise be a border box case applied under the facts presented because Epp's criminal threat conviction was a "[p]erson felony committed with a firearm." See K.S.A. 2019 Supp. 21-6804(h) (When a firearm is used to commit a person felony, the sentence is presumptive imprisonment.). The PSI report also reflected that Epp's criminal threat conviction required offender registration with a court finding on the record that a deadly weapon was used in the commission of his crime. See K.S.A. 2019 Supp. 22-4902(e)(2). There is no indication in the record that Epp objected to (1) identification of his crime in the PSI report as one requiring presumptive prison because a deadly weapon was used in committing the underlying crime or (2) identification in the PSI report that Epp's criminal threat conviction required offender registration with a court finding on the record that a deadly weapon was used in the commission of his crime. In fact, there is no indication in the record that Epp objected to any information in the PSI report.

6

Two days after the PSI report was filed with the court, Epp filed a motion for dispositional departure. Significantly, Epp expressly acknowledged in this motion that his sentence was presumptive prison in this case because he used a deadly weapon in committing a person felony:

"4.    The Defendant pled guilty for the primary offense of Criminal Threat, a severity level 9 person felony. Pursuant to the Kansas Sentencing Guidelines, the defendant has a criminal history score of [D] which normally would place him in a border box.

"5.    Due to Special Rules No. 1, the Defendant is in the presumptive prison box.

"6.    Although a firearm was used during the incident, the crime for which he was convicted, criminal threat, was the result of a verbal threat made by the Defendant. The other charges involving the firearm were dismissed."

At sentencing, and based on the information in the PSI report showing offender registration would be required with a court finding, the district court asked if the State was requesting that it make a factual finding that a deadly weapon was used in the commission of the crime. The State responded:

"Yes, Your Honor. The State's alleging that on that date he brandished a handgun in her direction and shot one round and told her he had more rounds and let's go. And so we believe that that was what the legislature had encapsulated when they decided any crimes using a firearm should be a registered offense."

The court then turned to defense counsel in order to provide her an opportunity to respond to the State's request:

"THE COURT:  Ms. Crane.

"MS. CRANE:  Thank you, Your Honor. I did file a motion for dispositional departure in this matter. The fact of the matter was [Wenzel] was shooting at his dogs, so he came out to see what was going on *and he shot up in the air. And so there was more to it than just he brandished a gun at her for no particular reason. . . .* [T]here is a firearm

that was kind of a costume firearm that he has defaced. It was not *the gun that was used in the incident. . . .*

> "THE COURT: Ms. Crane, do you agree I can make the finding that this was an offense committed with a firearm, thereby justifying registration as a person felony I should say?

> "MS. CRANE: The [aggravated assault] is not what he was actually convicted of. They charged him with agg[ravated] assault. He was not convicted of that. He was convicted of criminal threat, the [']come on, let's go. I've got more if you want. Let's go.['] I don't think it is something that needs to be registered for life or 10 years.

> "THE COURT: I think we need to set that issue for hearing unless the State withdraws its request for registration."

At this point, the State argued the district court could make a finding that this was an offense committed with a firearm, justifying registration as a person felony, based on the evidence presented at the preliminary hearing. The State then sought to clarify some of the facts presented by defense counsel; specifically, that Wenzel initially went outside to protect her own animals when Epp's dog approached her, showed its teeth, and lunged at her from 4 or 5 feet away so she pointed her gun towards the property line and fired it towards a tree row to scare the dog away. The State indicated it was at that point that Epp came out, fired his gun, and threatened Wenzel by saying that he had more ammunition than her. After the State provided this information, Wenzel provided a statement to the court about the negative impact this incident has had on her. When Wenzel was done, the following colloquy took place:

> "THE COURT: I'm going back to the question about registration. Mr. Davidson [prosecutor], do you believe I can make that finding based on the record, or would you like me to set that for hearing?

> "MR. DAVIDSON: I believe you can make that finding based on the record that's been presented. I would ask that the Court review the transcript of the plea hearing and the transcript of the preliminary hearing. I have the prelim[inary] transcript here and we can set it for your determination maybe next week or the week after. May I approach?

> "THE COURT: Yes. Whose testimony am I looking for?

"MR. DAVIDSON: There is testimony from Ms. Wenzel in there and another officer, Officer Clifford but the focus on the crime was based off from Ms. Wenzel's testimony.

"THE COURT: Alright. I am going to find this was an offense a person felony committed with a firearm and requires registration. So, Mr. Epp, you will need to complete the notice of registration. And you have the right to speak, Mr. Epp."

Epp then personally addressed the court. Epp did not speak to or challenge the court's finding that he committed the underlying person felony with a firearm that required registration. Instead, Epp presented argument in support of his motion for dispositional departure from presumptive prison by emphasizing that he was in drug treatment and trying to make changes to his life to get his children back into his home. Based on his statement to the court, we find the underlying premise of Epp's argument was that although he was facing presumptive prison under K.S.A. 2019 Supp. 21-6804(h) because a firearm was used to commit a person felony, a dispositional departure was justified because he was working on living a drug-free life. So Epp did not just fail to challenge the court's finding that he committed criminal threat with a firearm, he expressly acknowledged that he did.

Finally, the journal entry of judgment reflects that a special sentencing rule requiring presumptive prison (in what would otherwise be a border box case) applied under the facts presented because Epp's criminal threat conviction was a "[p]erson felony committed with a firearm." See K.S.A. 2019 Supp. 21-6804(h) (When a firearm is used to commit a person felony, the sentence is presumptive imprisonment.). Applying this special rule, the district court imposed a 12-month prison sentence. Significantly, Epp did not appeal from his presumptive prison sentence, which was based on a finding under K.S.A. 2019 Supp. 21-6804(h) that he committed his crime with a firearm. Instead, he challenges his opportunity to be heard on the issue in the context of the court's finding that he had to register as a violent offender. Epp's decision to plead to a crime in which he acknowledged a special rule applied based on his use of a firearm is incompatible with

9

his argument that he was deprived of an opportunity to be heard on whether he used a firearm in committing the crime to which he pled.

In sum, we find Epp had many meaningful opportunities to be heard on the issue of whether he used a deadly weapon in committing the crime of criminal threat. During the plea, he did not object when the State read its proffer of evidence that a firearm was used in the commission of the crime. Epp did not object to the PSI report, which stated this was a presumptive prison case under K.S.A. 2019 Supp. 21-6804(h), because a firearm was used in the commission of the crime. Epp filed a motion and argued in favor of a departure on a case that would have been presumptive probation absent the firearm. At the sentencing hearing, the district court specifically provided both Epp's attorney and Epp himself the opportunity to speak to the firearm finding for purposes of registration. Defense counsel responded to this inquiry by stating she did not think Epp should be required to register "for life or 10 years" as the result of a criminal threat conviction. But conspicuously missing from counsel's response was any challenge or objection to the State's request for a finding that Epp used a deadly weapon in committing the crime of criminal threat. Instead, they both used the time to argue in favor of a dispositional departure from presumptive prison based on progress Epp had made in drug treatment and in trying to get his children back into his home.

Epp was given notice and an opportunity to be heard. His failure to take advantage of the opportunity to be heard does not constitute a denial of due process.

*Burden of proof*

Next, Epp argues that KORA is unconstitutional because K.S.A. 2019 Supp. 22-4902(e)(2) contains no explicit standard of proof. In light of this deficiency, Epp suggests that due process requires a district court to find beyond a reasonable doubt that a

10

defendant used a deadly weapon when determining whether that defendant is a violent offender under the statute.

Epp acknowledges that a panel of this court has determined that the proper burden of proof for discretionary registration findings is preponderance of the evidence. See *State v. Ford*, No. 119,328, 2019 WL 3242420, at *4-6 (Kan. App. 2019) (unpublished opinion), *rev. denied* 311 Kan. 1048 (2020). But Epp argues that *Ford* was wrongly decided.

In *Ford*, the panel concluded that the Legislature intended for district courts to use a preponderance of the evidence standard when determining whether a defendant used a deadly weapon under K.S.A. 2018 Supp. 22-4902(e)(2). In reaching this conclusion, the panel reasoned:

"The failure of K.S.A. 2018 Supp. 22-4902(e)(2) to mention a burden of proof suggests a preponderance of evidence standard. This conclusion is further supported by the Legislature's inclusion of a beyond a reasonable doubt standard in subsection (c)(18) of K.S.A. 2018 Supp. 22-4902, which provides that a sex offender includes a person convicted of a crime involving 'any act which has been determined beyond a reasonable doubt to have been sexually motivated.' If we were to presume that proof beyond a reasonable doubt is required on all the district court's findings under K.S.A. 2018 Supp. 22-4902, then the language in K.S.A. 2018 Supp. 22-4902(c)(18) specifying the beyond a reasonable doubt standard would become superfluous. See *Patterson v. Cowley County, Kansas*, 307 Kan. 616, 626, 413 P.3d 432 (2018) ("We generally presume 'the legislature does not intend to enact useless or meaningless legislation.'"). As a result, we conclude that the Legislature intended for the district court to use a preponderance of the evidence standard when determining whether a defendant used a deadly weapon under K.S.A. 2018 Supp. 22-4902(e)(2)." *Ford*, 2019 WL 3242420, at *5.

The *Ford* panel explained that a preponderance of the evidence standard does not violate due process in this context because "the function of a standard of proof is to

11

instruct the fact-finder to the level of confidence that society expects for a particular decision" and that "[t]he different standards of proof reflect the differences in how society believes the risk of error should be distributed between the parties." 2019 WL 3242420, at *5. The panel noted that the most stringent burden of proof, beyond a reasonable doubt, applies to criminal trials due to the gravity of the private interests affected and that due process requires the State to prove the guilt of an accused beyond a reasonable doubt on each element of the crime charged. 2019 WL 3242420, at *5.

The *Ford* panel also pointed out that a preponderance of the evidence standard applies to all civil actions unless a fundamental individual interest or right is at stake, such as a case involving the termination of parental rights or the civil commitment of a mentally ill patient. 2019 WL 3242420, at *5; see K.S.A. 2019 Supp. 38-2269(a) (clear and convincing standard of proof applies to all termination of parental rights cases); K.S.A. 2019 Supp. 59-2966 (clear and convincing standard of proof required for civil commitment of mentally ill). The panel indicated that there is a higher risk of erroneous fact-finding in termination of parental rights cases because the proceedings "'employ imprecise substantive standards that leave determinations unusually open to the subjective findings of the judge'" and are often vulnerable to cultural or class bias to the detriment of poor or uneducated parents who lack the resources to mount a defense to the State's case. 2019 WL 3242420, at *6. The panel held that using a preponderance of the evidence standard in a deadly weapon finding does not create a similar undue risk of an erroneous deprivation of private interests. The panel reasoned that whether a defendant used a deadly weapon is an objective standard that is not so susceptible to subjective values or biases of a judge and that concerns about disparities in litigation resources are not as common in a deadly weapon finding as they are in a finding of parental unfitness. 2019 WL 3242420, at *6.

Given the relatively low risk of depriving defendants affected by KORA registration of their private interests by using a preponderance of the evidence standard,

12

as well as the fact that offender registration requirements do not implicate interests as fundamental or important as those which trigger a heightened standard of proof, the *Ford* panel held that a deadly weapon finding for purposes of KORA registration does not trigger that heightened standard. The panel further held that any privacy interest was outweighed by the government's considerable interest in protecting the public. 2019 WL 3242420, at *6.

Epp asserts that *Ford* was wrongly decided because it discounted the impact KORA imposes on registrants' fundamental liberty interests, because its finding that KORA serves a compelling public interest by protecting the public is unfounded, and because the rule of lenity requires a different result.

Contrary to Epp's arguments, the *Ford* panel's reasoning is sound. As discussed by the panel, KORA registration affects offenders' private interests by imposing reporting requirements and requiring them to pay registration fees. But these requirements do not implicate privacy rights or other interests as fundamental or significant as those which trigger a heightened standard of proof. *Ford*, 2019 WL 3242420, at *6; see *State v. Adams*, No. 114,276, 2016 WL 4499520, at *3 (Kan. App. 2016) (unpublished opinion) (placement on sexual offender registry does not burden offender's fundamental right to privacy); see also *In re W.M.*, 851 A.2d 431, 455 (D.C. 2004) (District of Columbia Sex Offender Registration Act does not infringe on fundamental liberty interests); *J.J.F. v. State*, 132 P.3d 170, 179 (Wyo. 2006) (private interest of sexual offender registrant "not so high as the fundamental interest involved in the parent-child relationship, or the fundamental interest in not being civilly committed, or the fundamental interest in not being deported"). We agree that the impact KORA imposes on offenders' private interests does not rise to the level of the fundamental interests involved in the parent-child relationship or the liberty interests at issue in civil commitment and criminal cases and thus does not warrant application of a stricter standard of proof.

13

KORA was enacted "in order to protect public safety and provide the public with notice of violent offenders present in the community." *State v. Franklin*, 44 Kan. App. 2d 156, 160, 234 P.3d 860 (2010), *abrogated on other grounds by State v. Carter*, 311 Kan. 206, 459 P.3d 186 (2020). Epp alleges that there is no evidence in the legislative record to support a finding that offenders who commit a felony with a deadly weapon are likely to reoffend and therefore must be registered or that adding this category of offenders to the registry would enhance public safety. But Epp's argument misses the point. As discussed, "the function of a standard of proof is to instruct the fact-finder to the level of confidence that society expects for a particular decision" and "[t]he different standards of proof reflect the differences in how society believes the risk of error should be distributed between the parties." *Ford*, 2019 WL 3242420, at *5.

Finally, Epp relies on the rule of lenity that applies to conflicting statutes to support his claim of error. See *State v. Horn*, 288 Kan. 690, 693, 206 P.3d 526 (2009) ("Where the legislature fails to manifest a clear legislative intent by permitting the existence of conflicting statutory provisions, the rule of lenity must be considered."). The rule of lenity requires this court to adopt the interpretation of a criminal statute most favorable to the defendant when presented with two reasonable and sensible interpretations of that statute. *State v. Collins*, 303 Kan. 472, 476, 362 P.3d 1098 (2015). But the rule of lenity arises only when there is any reasonable doubt about the statute's meaning. See *State v. Williams*, 303 Kan. 750, 760, 368 P.3d 1065 (2016). Here, Epp provides no substantive argument to support a finding that there is any reasonable doubt about the meaning of K.S.A. 2019 Supp. 22-4902(e)(2). His argument on this point necessarily fails.

In sum, KORA does not violate offenders' due process rights by failing to outline a process by which to contest a deadly weapon finding under K.S.A. 2019 Supp. 22-4902(e)(2) or by failing to provide a burden of proof.

*Epp's constitutional rights under* Apprendi

Epp contends that the district court violated his constitutional rights under *Apprendi* when the judge—rather than a jury—determined that he used a deadly weapon while committing the crime of criminal threat, a determination which triggered the requirement that he register as a violent offender under KORA.

Epp did not raise an *Apprendi* argument before the district court. But Epp correctly asserts that we may consider the application of *Apprendi* for the first time on appeal to prevent the denial of a fundamental right. *State v. Anthony*, 273 Kan. 726, 727, 45 P.3d 852 (2002); see *State v. Weis*, 47 Kan. App. 2d 703, 717, 280 P.3d 805 (2012) (considering *Apprendi* issue for first time on appeal to prevent denial of fundamental rights). Whether a defendant's constitutional rights as described under *Apprendi* were violated by a district court raises a question of law over which appellate courts have unlimited review. *State v. Huey*, 306 Kan. 1005, 1009, 399 P.3d 211 (2017).

Under *Apprendi*, only facts that increase the penalty, or punishment, for a crime need to be submitted to a jury. 530 U.S. at 490. But the Kansas Supreme Court repeatedly has rejected the argument that offender registration under KORA is punishment. See, e.g., *Carter*, 311 Kan. at 217; *State v. Perez-Medina*, 310 Kan. 525, 539-40, 448 P.3d 446 (2019); *Huey*, 306 Kan. at 1009-10.

In *Huey*, the Kansas Supreme Court found that because the Kansas Legislature intended KORA to be a civil regulatory scheme—not punishment—a defendant must present "the clearest proof" that registration is punitive before the court would consider registration a criminal penalty. 306 Kan. at 1010. To that end, the court must consider several factors to determine whether KORA's effects render it punitive as applied to violent offenders. These questions are fact intensive and require a clear record. But Huey raised his *Apprendi* argument for the first time on appeal and thus failed to present facts

in district court which showed that the registration's effects on him were punitive. Without a record, the Supreme Court held it could not conclude the effects of KORA were so punitive as to override the Legislature's intent that KORA be a civil remedy. 306 Kan. at 1010.

This court is duty bound to follow Kansas Supreme Court precedent, unless there is some indication the court is departing from its previous position. *State v. Rodriguez*, 305 Kan. 1139, 1144, 390 P.3d 903 (2017). Like Huey, Epp did not raise his *Apprendi* claim before the district court and has provided no fact-based record for this court to evaluate KORA's alleged punitive effects on him. Thus, Epp has not shown that his registration requirements as a violent offender are punishment. Because the registration order did not increase Epp's punishment, it was unnecessary that a jury find beyond a reasonable doubt that he used a deadly weapon while committing the offense of criminal threat. Epp's duty to register as a violent offender under KORA did not violate *Apprendi*.

Affirmed.